# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW W. COVIELLO, NATHAN BYRNE and VICTORIA HALSTED, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BHS MANAGEMENT SERVICES, INC., THE BOARD OF DIRECTORS OF BHS MANAGEMENT SERVICES, INC. and JOHN DOES 1-20,<br><br>Defendants. | **CIVIL ACTION NO.: 3:20-cv-30198-MGM** |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CLASS ACTION SETTLEMENT

**I.     INTRODUCTION**

Pursuant to the Court's Preliminary Approval Order (ECF No. 131), Plaintiffs Matthew W. Coviello, Nathan Byrne, and Victoria Halsted (collectively "Plaintiffs"), participants in the BHS Partnership 403(b) Pension Plan (the "Plan"), respectfully submit this Supplemental Memorandum of Law in further support of: (1) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (ECF No. 133, "Final Approval Motion"); and (2) Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Case Contribution Awards (ECF No. 135, "Motion for Fees and Expenses"), and to update the Court on the positive reception of the Settlement Class to the Settlement since the execution of the Settlement Notice.[1] For all of the reasons addressed in detail in Plaintiffs' moving papers (*see* ECF Nos. 133-137) and because the Settlement Class has reacted extremely positively to the Settlement – indeed, no objections have been filed after notice was distributed to over 13,000 participants and beneficiaries in the Plan – and the Independent Fiduciary retained on behalf of the Plan has issued a report approving the Settlement, the Court should enter an order granting final approval of the Settlement.

The proposed Settlement would resolve this action in its entirety and establish a common fund of $1,500,000 for the benefit of the Settlement Class, as well as certain non-monetary relief aimed at strengthening the Plan's fiduciary governance. The Settlement, which occurred after comprehensive discovery, is the product of thoroughly contested litigation between highly experienced counsel and extensive arm's-length negotiations, achieved with the assistance of Robert A. Meyer, Esq. of JAMS, a well-know and highly experienced mediator in ERISA and

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement. *See* ECF No. 124-1.

complex class action litigation. The Parties reached the Settlement after substantial negotiations, including two mediations, follow-up exchanges of information, and expert analysis.

In addition, the Settlement and all related applications have been reviewed and approved by the Independent Fiduciary retained on behalf of the Plan. The Settlement represents a very favorable result for the Class in light of the substantial risks and challenges that Plaintiffs and the Class would face in establishing liability and damages at trial, and defeating Defendants' affirmative defenses and arguments in response, as well as the costs and delays of continued litigation, including trial and inevitable appeals, which would occur absent the Settlement.

## II.     ARGUMENT

The Settlement should be finally approved because it represents an extremely favorable outcome and because it satisfies each of the requirements for approval. "Although the First Circuit [ ] has not provided supplemental guidance concerning the factors to be considered in assessing the fairness of a settlement, many courts in this Circuit have looked to those set forth by the Second Circuit [ ] in *Detroit v. Grinnell Corp.*, 495 F.2d 488, 463 (2d Cir. 1974),"[2] or variations of these factors. *In re Ranbaxy Generic Drug Application Antitrust Litigation*, 630 F.Supp.3d 241, 243 (D. Ma. 2022); *see also Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343–44 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 259 (D.N.H. 2007); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)). As discussed in Plaintiffs' moving papers, the *Grinnell* factors

---

[2] The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

are satisfied, warranting approval of the Settlement. In addition, in the First Circuit, "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

### A.     The Dissemination of the Class Notice was Extremely Effective

Pursuant to the Court's Order granting preliminary approval of the Settlement ("Preliminary Approval Order"), Class Counsel retained Analytics LLC ("Analytics") to serve as settlement and notice administrator. *See* Preliminary Approval Order, ¶ 6. On September 26, 2024, Analytics received spreadsheets containing, among other information, the names, mailing addresses, and email addresses for a total of 13,549 unique Settlement Class Members. *See* ECF No. 137-2, Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval ("Analytics Decl."), ¶¶ 6-7.[3] On September 27, 2024, Analytics emailed the Notice to Class Members that had an email address provided in the Class Data. *See* Analytics Decl, ¶ 8; *see also* Supplemental Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval ("Supp. Analytics Decl."), ¶ 5, attached as Exhibit A. On October 2, 2024, Analytics mailed the Notice by first class mail to the Class Members. *See* Analytics Decl., ¶ 9; Supp. Analytics Decl., ¶ 6. Also, since September 27, 2024, Analytics has maintained a Settlement Website and toll-free telephone support line to answer frequently asked questions and provide users with pertinent information regarding the settlement as well as contact information. *See* Analytics Decl., ¶¶ 13-14; Supp. Analytics Decl., ¶ 3; *see also* www.BHSERISASettlement.com. Dissemination of the mailed Class Notice was overwhelmingly successful, as of January 15, 2025,

---

[3] Attached as Exhibit 2 to ECF No. 137, Declaration of Mark K. Gyandoh in Support of Plaintiffs' Motions for Final Approval of Settlement, and for Award of Attorneys' Fees and Reimbursement of Expenses, and for Case Contribution Awards to Plaintiffs ("Gyandoh Decl.").

3

"out of 13,549 Notices … 1,172 (approximately 8.65%) were ultimately undeliverable." *See* Supp. Analytics Decl., ¶ 9.

### B.  No Objections to the Settlement

Members of the Settlement Class have responded extremely positively after receiving Notice of the Settlement. The deadline for objections was January 8, 2025. *See* Preliminary Approval Order, ¶ 9. No objections to the fairness, reasonableness, adequacy of the Settlement, any term of the Settlement Agreement, Plan of Allocation, proposed payment of costs for administering the Settlement, or requests for attorneys' fees and expenses, or case contribution awards for Plaintiffs were filed on the docket or submitted to Class Counsel or the Settlement Administrator. *See* Supp. Analytics Decl., ¶ 10. Courts recognize that the reaction of the class is one of the most important *Grinnell* factors for courts to consider at the final approval stage. *See* 4 NEWBERG ON CLASS ACTIONS § 13:54 (5th ed.). A small number of objections can be viewed as indicative of the adequacy of the settlement. *See Wal-Mart Stores, Inc. v Visa U.S.A.*, Inc., 396 F.3d 96, 118 (2d Cir. 2005) (quoting 4 NEWBERG ON CLASS ACTIONS § 11.41); *see also In re Ranbaxy Generic Drug Application Antitrust Litigation*, 630 F.Supp.3d at 245. Thus, the complete lack of objections decisively supports final approval. Moreover, the Settlement Administrator has complied with the Preliminary Approval Order and exhausted all reasonable means to notify members of the Settlement Class of the Settlement, including obtaining corrected addresses and remailing Notice where possible. *See* Supp. Analytics Decl., ¶¶ 7-9.

To date, neither Analytics nor Class Counsel has received a single objection, despite providing Notice of the Settlement and objection and exclusion procedures to more than 13,000 Settlement Class members. *See* Supp. Analytics Decl., ¶ 10. This strongly indicates the fairness, reasonableness, and adequacy of the Settlement and the Plan of Allocation. In addition to the lack

of objections to the Settlement, there have been no objections to the request for attorneys' fees and expenses or case contribution awards for Plaintiffs. Not only are the amounts requested reasonable as discussed in detail in Plaintiffs' moving papers (*see* ECF No. 136), but the lack of any objections to these applications further supports approval. Further, the Independent Fiduciary separately evaluated the Settlement Agreement and determined that it is reasonable, providing the Court with an independent basis to authorize the Settlement as recommended. *See* Report of the Independent Fiduciary for the Settlement in *Coviello, et al. v. BHS Management Services, Inc., et al.*, dated January 15, 2025, attached hereto as Exhibit B, at 7-9 ("Fiduciary Report").

### C. The Independent Fiduciary Report Supports Approval of the Class Action Settlement and Class Counsel's Requested Attorneys' Fees, Expenses, and Case Contribution Awards

Fiduciary Counselors was appointed to serve as the Plans' independent fiduciary. *See* Fiduciary Report, at 1. Fiduciary Counselors has extensive experience in serving as an independent fiduciary in connection with settlements in similar actions, including having "reviewed over 150 previous settlements involving ERISA plans." *Id.* Fiduciary Counselors entirely approves the relief sought in the Final Approval Motion and Motion for Fees and Expenses.

With respect to the Settlement, Fiduciary Counselors found as follows:

> The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone. …

> Without this Settlement, Plaintiffs would have to defeat Defendants' anticipated motion for summary judgment, and if successful, spend a significant amount of resources to prosecute this case through trial and post-trial appeals, all with no guarantee of any recovery. … Moreover, even if Plaintiffs were to prevail on liability, there is no guarantee the amount of damages proven would be worth the costs associated with trial.

> The $1,500,000 Settlement Amount is a fair and reasonable recovery given the posture of the case, the results in numerous similar cases in the last several

5

> years, the defenses the Defendants would have asserted regarding the remaining claim, the risks involved in proceeding to trial and the possibility of reversal on appeal of any favorable judgment.

*Id.*, at 8-9.

Fiduciary Counselors also found the Plan of allocation, including the De Minimis Amount of $10, to be reasonable. *See id*., at 7. Further, Fiduciary Counselors reviewed the request for attorneys' fees, reimbursement of expenses, and case contribution awards, and stated as follows:

> Class Counsel seek an award of attorneys' fees in the amount of $499,950, which represents $50 less than one-third of the Settlement Amount of $1,500,000. Class Counsel's lodestar was $364,943.50 as of December 9, 2024, when Class Counsel filed the Motion for Award of Attorneys' Fees and Reimbursement of Expenses and Case Contribution Awards and related papers. The lodestar multiplier would be 1.37 if the requested $499,950 were awarded. In our experience, the percentage requested and the lodestar multiplier are within the range of attorney fee awards for similar ERISA cases, with the most common award in similar cases equaling one-third of the settlement amount. ***In light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable.***

*Id.* (emphasis added).

Fiduciary Counselors also found the expense reimbursement request was reasonable. *Id*. Additionally, Fiduciary Counselors found that the requests for incentive awards of $10,000 for each of the Plaintiffs was reasonable because "[t]hey provided documents, reviewed the Complaint, sat for depositions, and monitored Class Counsel and the progress of the litigation, including discussions about the terms of the Settlement." *Id*.

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant the relief sought in their Final Approval Motion and Motion for Fees and Expenses.

Dated: January 15, 2025                              Respectfully submitted,

6

/s/ Mark K. Gyandoh
Mark K. Gyandoh, Esquire
(admitted *pro hac vice*)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email:  markg@capozziadler.com
Telephone: (610) 890-0200
Fax: (717) 233-4103

*Attorneys for Plaintiffs, the Plan and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: */s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esq.